Bartley, C. J.
The single question presented by this case is, whether the written contract of the parties was altered by a verbal agreement. The written contract expressly provided for payment for the hogs by the plaintiffs, at the time of delivery, which was to be between the 1st and the 5th of March, succeeding the time of the making of the contract on the 13th of January, 1852. It appears, that immediately after the execution of the written contract, the defendant, Ludwig, insisted that, according to a custom among stock dealers, he ought to have some money in advance; and the *5 plaintiff, Thurston, at first declined, but finally promised the defendant, that he would make him an advance of $150 or $200 about the 1st of February. The district court regarded this verbal promise as a valid alteration of the written contract between the-parties, and as creating a condition precedent to the obligation of the defendant to deliver the hogs. "Was there error in the action, of the court in this regard?
It is well settled, as a general rule, that all par.ol negotiations between the parties to a written contract, anterior to, or contemporaneous with, the execution of the instrument^ are to be regarded as either merged in it, or concluded by it. Accordingly, it is held, that parol evidence is incompetent to show terms or conditions at variance with, or in addition to, a written agreement, which the 5] parties agreed to ^verbally, prior to, or at the time the contract was reduced to writing, but which were not inserted in the instrument. Powell v. Edmonds, 12 East, 6; Ridgeway v. Bowman, 7 Cush. 268; Small v. Quincy, 4 Greenl. 497; Chitty on Contracts, 110. And it appears to be equally well settled, that, subsequent to the execution of a-written contract, it is competent for the parties,, by a new contract, although not in writing, either to abandon, waive, or annul, the prior contract, or vary, or qualify the terms of it, in any manner. And where the verbal contract only changes or modifies some of the terms of the original contract, it embraces by reference, all the written stipulations of the original undertaking, and is to be proven by the verbal agreement taken in its connection with the written contract. But where a written contract is thus either totally abandoned and annulled, or- simply altered or modified in some of its terms, it is done, and can only be done, by a distinct and substantive contract between the parties, founded on some valid consideration. And among the multifarious verbal negotiations of parties in reference to their mutual stipulations in written contracts to draw the line of distinction between' those which are valid and effectual as alterations or modifications of the terms of written contracts, and those which are mere solicitations, or nuda pacta, and, therefore, of no binding validity, requires, sometimes, much nicety of discrimination. And it is to be regretted that the reported adjudications bearing upon this distinction, are not all entirely perspicuous and consistent. The general language employed by some of the elementary authors touching this subject, to the effect that the-parties to a written contract, may by parol agreement waive, *6, 7 abandon, or discharge a written - contract, in whole or in part, or alter or modify any of its terms,' has led some to the inconsiderate conclusion, *that it could be done without any new and valid [(> ■consideration. This, however, is a mistake. A valid consideration is an essential and indispensable element in every binding agreement. If a written contract be altered by verbal agreement, such .agreement must have the essential ingredients of a binding contract; and although it may have reference to, and, indeed, embody the terms of the written contract, yet it must be founded on a new .and distinct consideration of itself.
When the verbal agreement of parties amounts to a waiver or discharge of mutual stipulations in a written contract, either in whole, or in part, the discharge of each by the other, from the obligations of the contract, may furnish a sufficient consideration. Forbearance, or extrinsic considerations may exist to furnish sufficient legal foundation for an alteration, by verbal agreement, of the stipulations in a prior existing contract. An agreement by one person to discharge another from the obligations of a written contract, as a matter purely ex gratia and in the nature of a donation, would be of no binding validity as a mere executory agreement, and to be effectual, must be fully executed by an actual release, or surrender of the contract in writing. There is a class of cases, how■ever, where a written contract may be altered or modified by a mere verbal agreement of the parties, which, at its inception, or as a mere executory agreement, would have no binding effect, yet by being acted upon by the parties until it would work a fraud or injury to refuse to carry it out, becomes binding and effectual as a contract. But ■a verbal agreement to have the effect to alter or modify the terms of a prior written contract, must be a valid and binding contract of itself, resting upon some new and distinct consideration. And it can not be supported on the supposition that it is founded on the continuation *or extension of the consideration of the prior or writ- [7 ten contract, which was complete of itself, and so far as it went, fixed the rights of the parties.
In the ease of Gross v. Nugent, 5 Barn. & Adolph. 65, in which the doctrine, that a written contract may be annulled, or its terms altered by subsequent verbal contract, is laid down by Lord Denman in the broadest language, it is not pretended that it can be done, otherwise than by a “ new contract ” which, of course, must be founded on a new and distinct consideration.
*8 The case of Lattimore v. Harsen, 14 Johns. 330, was a case in which the-plaintiffs, in a suit'to enforce a verbal contract, had subjected themselves to a penalty‘for the nOn-fulfillment of a written _ contract; and finding the contract a hard one, chose to pay the penalty rather than perform the contract, 'and'thereupon, the other party preferring the fulfillment of the contract to the payment of the penalty, verbally agreed that if the plaintiffs would go on and perform the work, they should be paid therefor, whatever it was reasonably worth, with which the plaintiffs complied. Here was a new and distinct contract, and'founded upon a new and distinct consideration. The performance of the work under the first contract, was abandoned, and being more beneficial'to the defendant even than the penalty incurred, furnished a good consideration for the new contract. And the court place the decision strictly on the ground of a sufficient new consideration. Substantially to the same effect is the case of Monroe v. Perkins, 9 Pick. 298, where one, by an instrument under seal, agreed to erect a building- for a fixed price, which proved to be an inadequate compensation, and having performed part of the work, refused to proceed further, whereupon the obligee promised, that if the party would go on and 8] complete the work, he should be paid for *his labor and materials what they were reasonably worth, and the work was done. Here the employer had aright of action on the written contract which was broken ; but he chose, in view of the benefit of the work, to make a new contract for its performance.
And the case of Cummings v. Arnold, 3 Met. 486, stands upon the same principle; also the case of Dearborn v. Cross, 7 Cow. 48; Randolph v. Perry, 2 Porter (Ala.), 376; Perrine v. Cheesman, 6 Halst. 177.
There is a class of cases, where parol evidence has been admitted in connection with written evidence, where it is apparent from the writing itself, that it does not embody the whole contract of the parties, or where the verbal agreement is not inconsistent with, but supplementary to, the written agreement. The case of Jeffry v. Walton, 1 Starkie, 213; falls within this class, where in the hire of a horse, a written stipulation on a card existed, merely regulating the time' of hiring and the rate of payment, parol evidence was admitted, showing additional terms in the agreement. Also Wallace v. Rogers, 2 N. H. 506, where articles are sold accompanied by a bill of parcels fixing the quantity, price, etc. Hoggins v. Plymp *9 ton, 11 Pick. 99; and Brodford v. Manly, 13 Mass. 139, are to the same effect. To this class, also belongs the case of White v. Parkin, 12 East, 582. The principle of these cases must be distinguished from that which is applicable to the case before us.
There is a still more extensive class of cases, in which parol evidence has been admitted to vary the terms of a prior written contract, where the verbal agreement, as a mere executory contract, would, at its inception, be wholly ineffectual, but which acquires validity and becomes binding from having been executed or acted on by the parties. Under the rule in this class of cases, oral evidence is ^admissible to show, that by subsequent agreement, [9 the time for the performance has been enlarged or the place for the performance changed from that fixed by the written contract. 1 Greenl. Ev., sec. 304. Keating v. Price, 1 Johns. Cases, 22.
But an oral agreement to enlarge the time, or change the place of performance fixed by a written contract, must be subsequent to the time of the execution of the latter, and constitute an independent agreement of itself, acquiring its binding effect, either from an existing consideration at the time, or from having been acted upon by the parties, until it could not be disregarded by one party without working an injury to the other party. In the case of Lefevre v. Lefevre, 4 Serg. & Rawle, 241, it was held that parol evidence was admissible to prove, that after the execution of a deed conveying a right to a water-course through the granted land, by courses and distances, a verbal agreement was entered into between the parties for their-mutual accommodation, altering the route of the water-course. And this evidence was admitted expressly on the ground, that the parties had acted on the verbal agreement, so that the original contract could no longer be enforced without a fraud upon one party. To the same effect is Grossman v. Fuller, 17 Pick. 174; also Richardson v. Cooper, 25 Maine, 450; Bailey v. Johnson, 9 Cow. 115; Lynd v. Beech, 7 Howard’s Pr. 113.
Upon a full review of the whole subject, it appears to be well established, that a verbal agreement, to be effectual and binding as an alteration of the express terms of a prior written contract between the parties, must be supported by a new and valid consideration. And that a mere executory contract, of the kind to constitute an exception to this rule, must have been acted upon so far, that a refusal to carry it out would work a fraud on one of the parties.
*10, 11 *The application of this view of the law to the case before us, removes all difficulty in making a satisfactory disposition of it. The verbal promise of Thurston was manifestly unsupported by any valid consideration, as disclosed by the evidence. The parties had just settled the terms of their written contract, completed the execution of it, by which Ludwig had bound himself to deliver the hogs, in consideration of the undertaking of Thurston & Hays to pay the stipulated price, at the time of delivery in March. The time and place of payment were fixed by the express terms of the written contract. The custom of the country, if any such actually existed as that spoken of by Ludwig, could not have affected the express terms of the written contract. What .conceivable consideration can be assigned to support Thurston’s promise as a binding obligation ? Ludwig had not refused a compliance with the written contract which he had just executed. Why should Thurston, except as a mere matter of accommodation, or favor, resting in his own discretion, promise an advance of $150 or $200 to Ludwig, one month before the stipulated time of payment, and that too, without security, when the terms of his written contract secured him against any such a risk ? Asa consideration for this promise, Ludwig was not required to deliver any more hogs, nor of a better quality, nor at any other time or place, nor at a less price, nor wait any greater length of time for the balance of the money. In short, Thurston was to take nothing for the fruits of' his promise, to which he was not entitled, and which he had not a' •right to expect at the time, from the performance of the written contract by Ludwig. The proposed advance, therefore, so far as the evidence discloses it, was a naked promise of an accommodation or favor, resting in the option of Thurston ; and it appears to 11] *have been so treated by the parties at the time. The written contract which had just been signed, was before them when the promise of the advance was made. If intended as a stipulation in their contract, why was it not inserted or indorsed on the contract at the time ? Why did Ludwig take his duplicate copy of the contract, -at the very time of the promised advance, and separate from Thurston without a change in the writing, which he carried away with him as the evidence of the agreement ? And it is not made to appear, that Ludwig ever made any request of Thurston for the advance. On the contrary, when Thurston, about the first of February, and near the time when the promised advance was to have *12 been made, sent his son to Ludwig to inquire about the delivery of the hogs, instead of requesting the advance, he did not even inquire about it, but said that he had the hogs, or the most of them, and would be ready to deliver them at the time specified. If the solemn stipulations of a written contract could be altered by a mere naked verbal promise under such circumstances, that certainty, which is the greatest guaranty of safety among business men, arising out of written contracts, would be greatly weakened. And evidence of loose and inconsiderate conversations, often not fully understood or accurately remembered, would be resorted to in many cases, to show waivers or variations in the stipulations of parties, with a view of avoiding the binding obligations of written contracts.
We are unanimous in the opinion that there was error in the proceedings of the district court.

Judgment reversed, and cause remanded.

Swan, Bkinkerhoee, Bowen, and Scott, JJ., concurred.